UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO CORONA, | ) Case No. CV 04-10484-RC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Gilberto Corona filed a complaint on December 27, 2004, seeking review of the Commissioner's decision denying his application for disability benefits.  The Commissioner answered the complaint on May 13, 2005, and the parties filed a joint stipulation on July 20, 2005.

**BACKGROUND**

**I**

On April 11, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since August 30, 2000, due to

1  bulging disks in his neck and back.  Certified Administrative Record

2  ("A.R.") 77-79, 90.  The plaintiff's application was denied on

3  August 12, 2002.  A.R. 1, 65-68.  The plaintiff then requested an

4  administrative hearing, which was held before Administrative Law Judge

5  Mary Everstine ("the ALJ") on April 29, 2003.  A.R. 33-63, 69.  On

6  May 28, 2003, the ALJ issued a decision finding plaintiff is not

7  disabled.  A.R. 11-24.[1]  The plaintiff appealed this decision to the

8  Appeals Council, which denied review on November 12, 2004.  A.R. 4-10.

9

10                                **II**

11      The plaintiff, who was born on March 3, 1969, is currently 36

12  years old.  A.R. 77, 80.  The plaintiff attended college for two

13  years, and has previously worked as a warehouse receiver, a warehouse

14  clerk/cashier, and a maintenance worker/headstone setter for a

15  cemetery.  A.R. 91, 96, 99-106, 126-27.

16

17      The plaintiff initially suffered work-related neck and lower back

18  injuries while lifting a box in December 1996, and again injured

19  himself while lifting and stacking pallets in July 2000 and while

20  lifting another box on August 29, 2000, A.R. 163-64, 208-09;

21  subsequently, plaintiff became depressed.  A.R. 224.[2]

22  //

23  _____

24      [1]  The plaintiff previously applied for disability benefits
    on May 2, 2001, A.R. 80-82, and the ALJ reopened the earlier
25  application in ruling on plaintiff's current application for
    disability benefits.  A.R. 14.
26

27      [2]  Although plaintiff has severe physical problems, see A.R.
    308-14, for purposes of this opinion, the Court only discusses
28  plaintiff's mental complaints.

1    On July 8, 2002, Gennady Musher, M.D., a psychiatrist, examined

2  plaintiff and diagnosed him with a depressive disorder (not otherwise

3  specified) and determined plaintiff's Global Assessment of Functioning

4  ("GAF") to be 60.[3]  A.R. 234-37.  Dr. Musher opined:

5

6    Based on the history and mental status examination from a

7        psychiatric point of view alone, the [plaintiff] is able not

8        to function adequately at this time.  He would not be able

9        to maintain appropriate social functioning.  He would not be

10       able to take directions from supervisors and get along with

11       coworkers on a sustained basis.  He would have difficulty in

12       maintaining adequate concentration and pace during an eight-

13       hour workday.  His ability to adapt to work-like situations

14       is inadequate.  He would have difficulty in dealing with

15       changes in the work place.  He would not be able to carry

16       out simple or complex instructions on a sustained basis.

17

18  A.R. 236-37.

19

20    Between July 19, 2002, and February 28, 2003, plaintiff received

21  psychiatric treatment at Kaiser Permanente from Louis Ragonetti, M.D.,

22  and Carlos Martinez, LCSW.  Plaintiff was diagnosed with chronic major

23

24    _____

          [3]   A GAF of 60 indicates "[m]oderate symptoms (e.g., flat
25  affect and circumstantial speech, occasional panic attacks) or
    moderate difficulty in social, occupational, or school
26  functioning (e.g., few friends, conflicts with peers or co-
    workers)."  American Psychiatric Association, Diagnostic and
27  Statistical Manual of Mental Disorders, 34 (4th ed. (Text
    Revision) 2000).
28

depression and panic attacks without agoraphobia, his GAF was determined to be 50,[4] and he was treated with psychotherapy and medication, including Zoloft.[5]  A.R. 239-53, 295-307.  On April 2, 2003, Dr. Ragonetti opined plaintiff has poor or no ability to perform work-related activities, but he can manage his own funds with his wife's help.  A.R. 295-96.

On August 12, 2002, C.H. Dudley, M.D., a nontreating, nonexamining psychiatrist, opined plaintiff has an affective disorder characterized by sleep disturbance and difficulty concentrating or thinking.  A.R. 257-70.  Dr. Dudley further opined plaintiff has a "mild" restriction in his daily living activities; "moderate" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and there was "insufficient evidence" of episodes of decompensation.  A.R. 267.  Dr. Dudley also found plaintiff is "moderately" limited in his ability to work in coordination or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticisms from supervisors, and get along with coworkers or peers without distracting them or

_____

[4]  A GAF of 50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[5]  Zoloft, also called Sertraline, "is prescribed for major depression — a persistently low mood that interferes with everyday living."  The PDR Family Guide to Prescription Drugs, 612, 763 (8th ed. 2000).

4

1  exhibiting behavioral extremes; but was otherwise not significantly

2  limited.  A.R. 271-72.  Dr. Dudley opined plaintiff is capable of

3  simple and complex work in a low public-contact environment.  A.R.

4  273.

5

6                              **DISCUSSION**

7                                **III**

8      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

9  review the Commissioner's decision denying plaintiff disability

10 benefits to determine if her findings are supported by substantial

11 evidence and whether the Commissioner used the proper legal standards

12 in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th

13 Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

14 "Substantial evidence means 'such relevant evidence as a reasonable

15 mind might accept as adequate to support a conclusion.'"  Burch v.

16 Barnhart, 400 F.3d 676, 678 (9th Cir. 2005) (citation omitted); Morgan

17 v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

18

19     The claimant is "disabled" for the purpose of receiving benefits

20 under the Act if he is unable to engage in any substantial gainful

21 activity due to an impairment which has lasted, or is expected to

22 last, for a continuous period of at least twelve months.  42 U.S.C. §

23 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden

24 of establishing a prima facie case of disability."  Roberts v.

25 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

26 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

27

28     Regulations promulgated by the Commissioner establish a five-step

1  sequential evaluation process to be followed by the ALJ in a

2  disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ

3  must determine whether the claimant is currently engaged in

4  substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in

5  the **Second Step**, the ALJ must determine whether the claimant has a

6  severe impairment or combination of impairments significantly limiting

7  him from performing basic work activities.  20 C.F.R. § 404.1520(c).

8  If so, in the **Third Step**, the ALJ must determine whether the claimant

9  has an impairment or combination of impairments that meets or equals

10  the requirements of the Listing of Impairments ("Listing"), 20 C.F.R.

11  § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the

12  **Fourth Step**, the ALJ must determine whether the claimant has

13  sufficient residual functional capacity despite the impairment or

14  various limitations to perform his past work.  20 C.F.R.

15  § 404.1520(f).  If not, in **Step Five**, the burden shifts to the

16  Commissioner to show the claimant can perform other work that exists

17  in significant numbers in the national economy.  20 C.F.R. §

18  404.1520(g).

19

20     Where there is evidence of a mental impairment that may prevent a

21  claimant from working, the Commissioner has supplemented the five-step

22  sequential evaluation process with additional regulations addressing

23  mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d

24  913, 914 (9th Cir. 1998) (per curiam).  First, the Commissioner must

25  determine the presence or absence of certain medical findings relevant

26  to the ability to work.  20 C.F.R. § 404.1520a(b)(1).  Second, when

27  the claimant establishes these medical findings, the degree of

28  functional loss resulting from the impairment must be rated by

considering four areas of function: (a) activities of daily living;
(b) social functioning; (c) concentration, persistence, or pace; and
(d) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(2-4).
Third, after rating the degree of loss, the Commissioner must
determine whether the claimant has a severe mental impairment.  20
C.F.R. § 404.1520a(d).  Fourth, when a mental impairment is found to
be severe, the Commissioner must determine if it meets or equals a
Listing.  20 C.F.R. § 404.1520a(d)(2).  Finally, if a Listing is not
met, the Commissioner must then perform a residual functional capacity
assessment, and the ALJ's decision "must incorporate the pertinent
findings and conclusions" regarding plaintiff's mental impairment,
including "a specific finding as to the degree of limitation in each
of the functional areas described in [§ 404.1520a(c)(3)]."  20 C.F.R.
§ 404.1520a(d)(3), (e)(2).

     Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
the alleged onset of disability.  (Step One).  The ALJ then found
plaintiff has "an impairment or combination of impairments considered
'severe'" (Step Two); however, he does not have an impairment or
combination of impairments that meets or equals a Listing.  (Step
Three).  The ALJ next determined plaintiff is not able to perform his
past relevant work.  (Step Four).  Finally, the ALJ concluded
plaintiff can perform a significant number of jobs in the national
economy, including work as a battery inspector and toy inspector;
therefore, he is not disabled.  (Step Five).[6]

_____

     [6]  In reaching this conclusion, the ALJ erred in failing to
follow the multi-step process outlined above for evaluating

7

1                                    **IV**

2      A claimant's residual functional capacity ("RFC") is what he can

3   still do despite his physical, mental, nonexertional, and other

4   limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

5   Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

6   the ALJ found plaintiff has the RFC to perform light work[7] with the

7   following limitations:

8

9      limitations of a sit/stand option; no prolonged overhead

10      reaching or work at or above shoulder level; no repetitive

11      motion of the cervical spine to full extension or flexion

12      (though he can move his head within a normal range of

13      motion); simple repetitive tasks; and minimal interaction

14      with the public and coworkers.

15

16   A.R. 23.  The ALJ then concluded at Step Five that plaintiff retained

17   the RFC to perform a substantial number of jobs in the national

18   economy.  However, plaintiff contends the RFC finding set forth above

19   _____

20   mental impairments.  Cf. Gutierrez v. Apfel, 199 F.3d 1048, 1051
    (9th Cir. 2000).

21      [7]  Under Social Security regulations, "[l]ight work involves
22   lifting no more than 20 pounds at a time with frequent lifting or
    carrying of objects weighing up to 10 pounds.  Even though the
23   weight lifted may be very little, a job is in this category when
    it requires a good deal of walking or standing, or when it
24   involves sitting most of the time with some pushing and pulling
    of arm or leg controls.  To be considered capable of performing a
25   full or wide range of light work, you must have the ability to do
    substantially all of these activities."  20 C.F.R. §§
26   404.1567(b), 416.967(b).  "[T]he full range of light work
    requires standing or walking for up to two-thirds of the
27   workday."  Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir.
    1984); SSR 83-10, 1983 WL 31251, *6.
28

1  is not supported by substantial evidence because the ALJ erroneously

2  rejected the opinions of his treating and examining psychiatrists, and

3  the Commissioner concedes that the ALJ "did not adequately explain why

4  she rejected portions of the[] opinions [of Drs. Ragonetti and

5  Musher]."  Jt. Stip. at 7:12-14.

6

7      Here, Drs. Ragonetti and Musher, the only treating or examining

8  psychiatrists to consider plaintiff's mental condition, each found

9  plaintiff's mental problems effectively prevent plaintiff from

10  maintaining full-time employment.  A.R. 236-37, 295-96.  Nevertheless,

11  the ALJ rejected these opinions and instead concluded plaintiff

12  retains the RFC to perform "simple repetitive tasks" with "minimal

13  interaction with the public and coworkers."  A.R. 23.  In so doing,

14  the ALJ cited no medical authority to support her opinion, but instead

15  erroneously and "'arbitrarily substitute[d] [her] own judgment for

16  competent medical opinion. . . .'"  Balsamo v. Chater, 142 F.3d 75, 81

17  (2d Cir. 1998) (citations omitted); Day v. Weinberger, 522 F.2d 1154,

18  1156 (9th Cir. 1975).[8]

19  _____

20      [8]  The parties speculate that the ALJ relied on the opinion
   of Dr. Dudley, a nontreating, nonexamining psychiatrist.  See
21  Joint Stip. at 6:23-25, 7:20-22.  However, this Court cannot
   consider such speculation since the ALJ did not discuss Dr.
22  Dudley's opinion in rendering her decision.  See Pinto v.
   Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (Court "cannot
23  affirm the decision of an agency on a ground that the agency did
   not invoke in making its decision."); Ceguerra v. Secretary of
24  Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991) ("A
   reviewing court can evaluate an agency's decision only on the
25  grounds articulated by the agency.").  In any event, "[t]he
   opinion of a nonexamining physician cannot by itself constitute
26  substantial evidence that justifies the rejection of the opinion
   of either an examining physician or a treating physician."
27  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995); Morgan, 169

28

1        Moreover, the medical opinion of a treating physician is entitled

2    to special weight since that physician "is employed to cure and has a

3    greater opportunity to know and observe the patient as an individual."

4    Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v.

5    Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. §

6    404.1527(d)(2) (generally providing more weight is given to treating

7    sources "since these sources are likely to be the medical

8    professionals most able to provide a detailed, longitudinal picture of

9    your medical impairment(s) . . .").  Therefore, the ALJ must provide

10   clear and convincing reasons for rejecting the uncontroverted opinion

11   of a treating physician, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th

12   Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003),

13   and "[e]ven if [a] treating doctor's opinion is contradicted by

14   another doctor, the ALJ may not reject this opinion without providing

15   'specific and legitimate reasons' supported by substantial evidence in

16   the record."  Reddick, 157 F.3d at 725; Bayliss, 427 F.3d at 1216.

17

18       Similarly, "the Commissioner must provide 'clear and convincing'

19   reasons for rejecting the uncontradicted opinion of an examining

20   physician[,]" Lester, 81 F.3d at 830; Bayliss, 427 F.3d at 1216, and

21   "[e]ven if contradicted by another doctor, the opinion of an examining

22   doctor can be rejected only for specific and legitimate reasons that

23   are supported by substantial evidence in the record."  Regennitter v.

24   Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir.

25   1999); Bayliss, 427 F.3d at 1216.

26   //

27

28   F.3d at 602.

1    Here, the ALJ did not provide specific and legitimate reasons for

2    rejecting the opinions of Drs. Ragonetti and Musher.  The ALJ rejected

3    Dr. Ragonetti's opinions because they were supposedly "[w]ithout the

4    support of treatment records."  A.R. 20.  However, this is not so.

5    The administrative record contains many treatment records from Dr.

6    Ragonetti.  See A.R. 239-53, 295-307.  Thus, the ALJ erred.  Holohan

7    v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001); Smolen, 80 F.3d at

8    1286-87.  Similarly, the ALJ rejected Dr. Musher's opinions solely

9    because she believed Dr. Musher's assessment of plaintiff's GAF was

10   inconsistent with Dr. Musher's conclusion that plaintiff is not able

11   to adequately function from a psychiatric viewpoint.  A.R. 20.

12   However, this single perceived inconsistency, in and of itself, is not

13   a sufficient reason to reject Dr. Musher's conclusions.  See Sprague,

14   812 F.2d at 1230-31 (ALJ's reference to minor inconsistencies in

15   physician's opinions does not provide sufficient basis to reject

16   opinion); Duncan v. Barnhart, 368 F.3d 820, 824 (8th Cir. 2004)

17   ("[W]hile [physician's] current GAF assessment . . . may not have been

18   consistent with the remainder of her opinion, the ALJ erred by simply

19   disregarding the entirety of [physician's] opinion, particularly when

20   [the physician] otherwise consistently documented [plaintiff's]

21   disabilities.").  Therefore, the ALJ's Step Five determination is not

22   supported by substantial evidence.

23

24                               V

25   When the Commissioner's decision is not supported by substantial

26   evidence, the Court has authority to affirm, modify, or reverse the

27   Commissioner's decision "with or without remanding the cause for

28   rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

                                  11

1   1076 (9th Cir. 2002).  "[W]here the record has been developed fully

2   and further administrative proceedings would serve no useful purpose,

3   the district court should remand for an immediate award of benefits."

4   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); McCartey, 298

5   F.3d at 1076-77.  Here, as a matter of law, this Court must credit the

6   opinions of Drs. Ragonetti and Musher because the ALJ failed to

7   provide legitimate reasons for rejecting these opinions.  Lester, 81

8   F.3d at 834; Edlund, 253 F.3d at 1160.  As the ALJ noted, "if we adopt

9   Dr. Ragenetti's [sic] opinion, poor to none in all areas, [plaintiff]

10   would be disabled."  A.R. 61.  Similarly, properly crediting Dr.

11   Musher's opinion that plaintiff, among other deficiencies, is not able

12   to "carry out simple or complex instructions on a sustained basis[,]"

13   maintain adequate concentration and pace for an 8-hour workday,

14   maintain appropriate social functioning, or "take directions from

15   supervisors [or] get along with coworkers on a sustained basis[,]"

16   A.R. 236-37, plaintiff's "entitlement to disability benefits is

17   clear."  Benecke, 379 F.3d at 596.

18

19     Nevertheless, the Commissioner contends the matter should be

20   remanded so the ALJ can "consider all medical opinions, re-contact any

21   treating or examining sources as necessary, and provide appropriate

22   rationale that explains the weight given the medical opinions.

23   . . ."  Jt. Stip. at 7:23-28, 21:13-23:14.  This is not necessary,

24   here, because the record has been fully developed and "remand for

25   further administrative proceedings [would] serve[] no useful purpose

26   and is unwarranted."  Benecke, 379 F.3d at 596; Moisa v. Barnhart, 367

27   F.3d 882, 887 (9th Cir. 2004).  To the contrary, "[a]llowing the

28   Commissioner to decide the issue again would create an unfair 'heads

1  we win; tails, let's play again' system of disability benefits

2  adjudication."  Benecke, 379 F.3d at 595; Moisa, 367 F.3d at 887.

3  Furthermore, "[r]emanding a disability claim for further proceedings

4  can delay much needed income for claimants who are unable to work and

5  are entitled to benefits, often subjecting them to 'tremendous

6  financial difficulties while awaiting the outcome of their appeals and

7  proceedings on remand.'"  Benecke, 379 F.3d at 595 (quoting Varney v.

8  Secretary of Health & Human Servs., 859 F.2d 1396, 1398 (9th Cir.

9  1988)).  Therefore, crediting the opinions of Drs. Ragonetti and

10  Musher, the plaintiff is disabled, and the Commissioner shall award

11  him disability benefits.  Benecke, 379 F.3d at 595; Moisa, 367 F.3d at

12  887.

13

14                              **ORDER**

15      IT IS ORDERED that: (1) plaintiff's request for relief is

16  granted, and (2) consistent with this Opinion, the Commissioner shall

17  award benefits to the plaintiff under Title II of the Social Security

18  Act, 42 U.S.C. § 423, and Judgment shall be entered accordingly.

19

20  DATE:   March 2, 2006            /s/ Rosalyn M. Chapman
                                     ROSALYN M. CHAPMAN
21                                   UNITED STATES MAGISTRATE JUDGE

22  R&R-MDO\04-10484.MDO
    3/2/06

23

24

25

26

27

28